**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CASE NO. 2:20-cr-62(2) |
| | : | JUDGE MORRISON |
| **WHITNEY LANCASTER** | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SEVERANCE**

Defendant Whitney Lancaster has moved this Court to sever his trial from the joint trial with his co-defendant, Steven Rosser, which is currently scheduled for January 24, 2022. Counsel for Lancaster suggests that he will be prejudiced by the spillover effect of Rosser's guilt and that there is a lessor quantity of evidence of guilt related to Lancaster. Counsel further complains that the existence of Count One against Rosser (which does not involve Lancaster) will substantially prejudice Lancaster in facing Counts Two and Three. Both arguments are without merit and do not support the extreme relief of conducting this trial twice. As discussed further below, Lancaster is charged in both Counts Two and Three with directly conspiring with Steven Rosser, and the evidence introduced at trial is admissible with respect to both defendants, whether tried jointly or separately. In addition, given the strong preference for joint trials of co-defendants, the jury should be presumed capable of evaluating evidence related to Rosser and Count One without any unfairly prejudicial impact on Lancaster. For these reasons, the United States opposes this request for severance and submits that joinder of these defendants and counts was proper at the time of their indictment and remains proper for trial too.

## I. LEGAL STANDARDS

Federal Rules of Criminal Procedure 8(b) and 14(a) govern the joinder and severance of defendants for trial. Defendants may be indicted together where they collectively participate in the same offense. Fed. R. Crim. P. 8(b). The rules also provide for joinder of two or more offenses if they are of the same or similar character or where they are based on a common scheme or plan. Fed. R. Crim. P. 8(a). When joinder is proper, "[t]he defendants may be charged in one or more counts together or separately," and "[a]ll defendants need not be charged in each count." Fed. R. Crim. P. 8(b).

Although "a court may order separate trials if 'consolidation for trial appears to prejudice a defendant,' Fed. R. Crim. P. 14(a), severance is not the norm." *United States v. Tisdale*, 980 F.3d 1089, 1094 (6th Cir. 2020). Rather, "[j]oint trials are favored." *Id.* (quotation omitted). The reason for this preference is two-fold: joint trials are more efficient and joint trials decrease the risk of inconsistent verdicts. As the Supreme Court has explained, "joint trials conserve [government] funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *United States v. Lane*, 474 U.S. 438, 449 (1986) (quotation omitted). Joint trials also "serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). For these reasons, "[t]here is a preference in the federal system for joint trials." *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

Given this "strong policy presumption" in favor of joint trials, defendants seeking severance under Rule 14(a) face a steep burden. *United States v. Carver*, 470 F.3d 220, 238 (6th Cir. 2006). It is not enough to allege ordinary prejudice inherent in any joint trial; instead, "a defendant seeking severance . . . bears a strong burden and must demonstrate substantial, undue, or compelling prejudice." *Id.* (quotation omitted). Put differently, severance is required "only if

there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

Both before and especially after the *Zafiro* decision, courts have refused to grant severance on the grounds that: (i) "a defendant might have a better chance for acquittal if tried separately"; (ii) "the co-defendants had different levels of culpability than the defendant seeking severance"; or (iii) "evidence may be admissible against one defendant but not against others." 1A Charles Alan Wright et al., *Federal Practice and Procedure*, § 223 (4th ed. 2015) (collecting cases); *see also United States v. Gardiner*, 463 F.3d 445, 473 (6th Cir. 2006); *United States v. Lloyd*, 10 F.3d 1197, 1215 (6th Cir. 1993). At bottom, "[t]he risk of prejudice will vary with the facts in each case," and "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539. Motions for severance under Rule 14 thus fall under the "sound discretion" of the district court. *Id.* at 541.

## II. ARGUMENT

### A. Joinder Was Proper Under Rule 8.

Review of whether joinder is proper "is determined by the allegations on the face of the indictment." *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002). As detailed in the Indictment, Rosser and Lancaster are charged with participating in two separate conspiracies together. Count Two details a conspiracy between Rosser and Lancaster to unlawfully arrest "A.S." for an alleged drug offense on April 20, 2018, which was a deprivation of his civil rights, in violation of 18 U.S.C. § 241. Count Three details a wire-fraud conspiracy involving Rosser and Lancaster in a double billing scheme for their work as special duty officers, all in violation of 18 U.S.C. § 1349. In addition, Rosser is charged alone in Count One with another civil rights violation for his involvement in a physical altercation at Nick's Cabaret and the subsequent arrest

3

of the other participant in that altercation, again in violation of § 241. There are no other defendants charged in this Indictment, and the same law enforcement agencies and prosecutors conducted this joint investigation.

As the Indictment makes clear, the defendants took advantage of their positions as police officers to deprive other people of their civil rights and to defraud their employers of wages—once acting separately (Count One; Rosser only), and twice acting together (Counts Two and Three). Several courts, including the Sixth Circuit, have found joinder was proper in similar cases involving multiple law enforcement officers charged with civil-rights conspiracies and related offenses. *E.g.*, *United States v. Redd*, 29 F. App'x 290, 294-98 (6th Cir. 2002) (holding that severance was not required for two police officers charged with civil rights conspiracy and related offenses after conducting eight separate bogus raids in Detroit—sometimes acting in concert, and other times acting separately); *United States v. Volpe*, 42 F. Supp. 2d 204, 208-13 (E.D.N.Y. 1999) (denying severance motion from five police officers charged in twelve different counts, including two separate civil rights conspiracies, involving different victims of false arrests and assaults).

In both cases, the courts found that joinder was proper under Rule 8, despite the fact that different defendants were charged with different crimes. *Redd*, 29 F. App'x at 297-98; *Volpe*, 42 F. Supp. 2d at 208-13. Indeed, in both cases, the moving defendants had far stronger arguments than Lancaster given both the number and the nature of the additional charges that applied to the other defendants. In *Redd*, for example, the other defendants were charged with at least a dozen additional crimes like "selling crack cocaine, possessing stolen firearms, and lying to the grand jury," which the moving defendant (Officer Shackleford) argued were too "dissimilar from the crime of [civil-rights] conspiracy he was charged with committing." 29 F. App'x at 296. And in *Volpe*, one of the defendants (Officer Wiese) complained of only being named in one of the civil-rights conspiracies (not both) and in not being charged with *any* follow-on offenses like

witness tampering, obstruction of justice, or being an accessory after the fact, as his codefendants were charged. 42 F. Supp. 204, 208, 212-13. Despite these arguments in favor of misjoinder under Rule 8, joint trials were ordered, and severance was denied in both cases.

Counsel for Lancaster has already acknowledged that joinder of offenses is permissible if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan" or if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses". (Doc. #50, PAGEID #135). Clearly, this is the precise situation currently before this Court. The charges and elements required to be proven in both Count Two and Count Three are identical for each defendant, and Counts One and Two "are of the same or similar character" as one another; indeed, they involve the same charge.

Further, the testimony and evidence related to activity by Rosser in support of the conspiracies from Counts Two and Three would also still be relevant and admissible in a separate trial against Lancaster. In other words, the witnesses and evidence presented at any separate trial, as now requested by Lancaster, would be the same as in the current joint trial. Where the same evidence is generally admissible against all defendants, severance should not be granted. *United States v. Ciampaglia*, 628 F.2d 632, 643-44 (lst Cir. 1980). "[T]he general rule in conspiracy cases is that persons jointly indicted should be tried together and that this is particularly true where the offense charged may be established against all the defendants by the same evidence and which result from the same series of acts." *United States v. Moreno*, 933 F.2d 362, 370 (6th Cir. 1991) (quoting *United States v. Dye*, 508 F.2d 1226, 1236 (6th Cir. 1974)).

5

### B. Lancaster Has Failed to Show that Severance is Required Under Rule 14.

Perhaps recognizing that joinder was presumptively proper under Rule 8, Lancaster has attempted to avoid a joint trial by claiming there is a substantial likelihood of transference of guilt or spillover from Rosser. Counsel suggests that the quantity of evidence establishing Rosser's guilt in these offenses will somehow taint Lancaster's chance at an acquittal. But a defendant is not entitled to severance simply because the prosecution's proof is greater against a co-defendant. *United States v. Ledbetter ("Short North Posse")*, 137 F. Supp. 3d 1042, 1053 (S.D. Ohio 2015) (Marbley, J.) ("[I]t is . . . well settled that defendants are not entitled to severance merely because they have a better chance of acquittal in separate cases." (quoting *Zafiro*, 506 U.S. at 540)). Even where there is some risk of prejudice from the potential spillover of evidence, "it is often of the type that can be cured with proper limiting instructions, which juries are presumed to follow." *Id.* (cleaned up). Accordingly, "spillover of evidence from one case to another does not require severance." *United States v. Dimora*, 750 F.3d 619, 631 (6th Cir. 2014) (quotation omitted).

Lancaster is not the first defendant to argue for severance based on a "spillover" theory. But "[t]he Sixth Circuit repeatedly has rejected the same argument that [he] make[s] here by finding that a likely disparity in the quantity and quality of evidence against co-defendants does not merit separate trials." *Short North Posse*, 137 F. Supp. 3d at 1053-54 (collecting cases); *see also, e.g.*, *United States v. Gardiner*, 463 F.3d 445, 473 (6th Cir. 2006) (rejecting argument that severance was required "because the overwhelming evidence at trial pertained [only] to [co-defendant's] case"); *United States v. Harris*, 9 F.3d 493, 501 (6th Cir. 1993) ("[D]isparity of evidence is generally not enough to cause the granting of a separate trial."); *United States v. Causey*, 834 F.2d 1277, 1288 (6th Cir. 1987) ("[A] defendant is not entitled to a severance simply because the evidence against a codefendant is far more damaging than the evidence against him. . . . [This] is simply a fact of life in multiple defendant cases.").

To prevail under a "spillover" theory, Lancaster must demonstrate specific, actual, or compelling prejudice from the evidence. Merely describing or worrying about the quantity or quality of evidence available against each defendant does not meet this burden. *Short North Posse*, 137 F. Supp. 3d at 1055 ("The possibility that a defendant may suffer some disadvantage from being tried with individuals who are more culpable or who more frequently engaged in other criminal activity does not, standing alone, justify separate trials." (collecting cases)). Instead, a defendant must show "*markedly* different degrees of culpability" among the defendants standing trial together in "a complex case." *Id.* This is not such a case.

<u>Potential Spillover from Joint Counts.</u> The weakness of Lancaster's "spillover" argument is apparent in the discussion of the wire-fraud conspiracy from Count Three, for which both he and Rosser are jointly charged. While the government does not necessarily agree with Lancaster's accounting of loss[1] as it relates to the double-billing scheme, the government recognizes that Rosser was the point of contact for the special-duty detail at Fort Rapids and was the greater fraudster between the two defendants. Once again, however, a defendant is not entitled to severance simply because proof is greater against a co-defendant. *United States v. Harris*, 9 F.3d 493, 500 (6th Cir. 1993). The jury does not determine (or distinguish) just "how" guilty each defendant is on each count; it's an up-or-down proposition. In truth, the government does not have to prove that there were *any* financial losses to CPD or Fort Rapids to convict the defendants on Count Three, nor will the jury be asked to find any losses or to attribute them to Rosser or Lancaster on an individual basis. *See United States v. Maddux*, 917 F.3d 437, 445 (6th Cir. 2019) ("[T]he mail and wire fraud statutes do not require any proof that the defendant's fraud caused losses for the victim."). That may well be a sentencing determination for the Court,

---

[1] The United States agrees that the CPD timekeeping system was confusing; however, the instances of double billing and/or fraudulent timekeeping is greater than suggested by counsel for Lancaster.

but it is not a function for the jury at trial. For these reasons, fraud defendants are not entitled to separate trials based on their relative culpability or the losses they individually cause. *See United States v. Bates*, 784 F. App'x 312, 330 (6th Cir. 2019) ("[A]lthough Kinsey Bates arguably possessed a lower degree of culpability in comparison to her codefendants, that is not enough to show that the district court abused its discretion in denying her motion for severance.").

<u>*Potential Spillover from Stand-Alone Count.*</u> Likewise, Lancaster's complaint that evidence of Rosser's guilt on Count One will somehow unfairly prejudice his own defense on the remaining counts falls far short of justifying severance. It is not prejudicial per se to have multiple conspiracies in one trial that do not include every defendant in each conspiracy; instead, the Court must find that actual prejudice exists before ordering separate trials. *United States v. Holloway*, 971 F.2d 675, 678-79 (11th Cir. 1992) (rejecting argument that prejudice arose because "the indictment charged two conspiracies, one of which [the defendant] took no part in"); *Volpe*, 42 F. Supp. 2d at 213 (rejecting argument that Rule 14 required severance because moving defendant "has not been indicted in any of the Antoine-related [civil rights deprivation] charges . . . . The court will make clear to the jury that it must consider the case against each defendant separately."). Lancaster cannot establish prejudice here because, consistent with the jury instructions, the jury will be tasked with determining guilt on an individual basis, based upon the elements and evidence presented. Courts presume juries capable of following their instructions and assessing the evidence as it applies to each defendant in a multi-defendant trial; the burden rests with a defendant to show the contrary. *Short North Posse*, 137 F. Supp. 3d at 1055 ("[J]uries are presumed capable of following instructions regarding the sorting of evidence and the separate consideration of multiple defendants." (quoting *Mays*, 69 F.3d at 120)); *United States v. Moreno*, 933 F.2d 362, 670 (6th Cir. 1991) (collecting cases). Lancaster has failed to show that the jury will be incapable of performing its task in this case.

*Potential Spillover from Uncharged Conduct.* Similarly, any concern that evidence regarding Rosser's uncharged conduct might cause substantial prejudice to Lancaster is far too speculative to warrant the extraordinary remedy sought. For one thing, far more inflammatory and prejudicial evidence related to the conduct of co-defendants has not justified severance in similar police misconduct cases. *Redd*, 29 F. App'x at 298 (rejecting officer's argument that "proof against him was 'sandwiched around the lurid testimony' about his co-defendants" and their drug dealing, firearm possession, and lying to the grand jury); *Volpe*, 42 F. Supp. 2d at 213 (rejecting officer's "conclusory statement that 'massive amounts' of evidence relating to the [other victim's] charges and the obstruction charges will prejudice him"). For another, although the discovery provided to the defendants has included all schemes and behavior investigated by the FBI, that does not mean that all (or any) of that evidence will be used at trial. For example, the government does not intend to introduce evidence of Rosser's activity with Fifth-Third Bank or his misconduct at "The Goat" during its case-in-chief. At bottom, Lancaster's concern about Rosser's uncharged conduct is premature and does not support his argument for severance.

*Potential Confrontation Clause Issue.* Finally, Lancaster has suggested that his Sixth Amendment right of confrontation may be implicated by statements that Rosser made during the investigation of the bar assault incident which is the subject of Count One. Undersigned counsel cannot agree; any statements made by Rosser regarding that incident relate solely to his own culpability for that assault and arrest, for which Lancaster is not charged nor even mentioned. Under those circumstances, *Bruton v. United States*, 391 U.S. 123 (1969), is not implicated. *See Short North Posse*, 137 F. Supp. 3d at 1060 (denying severance to defendant who saw "unconstitutional shadows lurking behind every corner"). Nonetheless, before the United States introduces any statements made by Rosser to law enforcement, we will share these statements with the Court *ex parte* to ensure there is no potential violation of Lancaster's rights.

9

### C. Severance Would Undercut the Twin Aims of Joint Federal Trials.

Lancaster's request for severance is also at odds with the strong federal preference for conducting joint jury trials, which both increase efficiency and avoid inconsistent verdicts. "Society has an interest in speedy and efficient trials," even in run-of-the-mill cases. *Carver*, 470 F.3d at 238. Conducting multiple trials in the same case "produce[s] additional labor for judges and juries, which results from the unnecessary repetition of evidence and trial procedures." *Id.* This is especially important in historical conspiracy cases with significant overlapping evidence.

Given the already existing burden of empaneling a jury during COVID times, severance would require calling an additional jury and appearance of all witnesses a second time. This would undermine "the predominant consideration" in any severance analysis—namely, whether a joint trial would serve the goals of trial economy and convenience. *See United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987). "Forcing the Government to prove these overlapping facts again and again in multiple trials would only cause the sort of unnecessary expense, inconvenience, and delay that joinder is meant to avoid." *See United States v. Ledbetter ("Short North Posse")*, 929 F.3d 338, 346 (6th Cir. 2019). The inconvenience and expense that separate trials force upon the government and witnesses is a factor to be weighed by the trial court in determining whether to sever a joint trial. *United States v. Davis*, 623 F.2d 188, 194 (lst Cir. l980).

There is a substantial public interest in a joint trial because a joint trial "expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids necessity of recalling witnesses who would otherwise be called upon to testify only once." *Parker v. United States*, 404 F.2d 1193, 1196 (9th Cir. l968). Many of the same witnesses—a significant number of whom are law-abiding police officers with other duties—would have to testify twice if

Lancaster's trial were severed. Likewise, much of the same evidence would have to be introduced if Lancaster is tried separately from Rosser. Where, as hwere, separate trials involve the repetitive use of most of the same evidence and the same facts, "there would be no possibility" of the court abusing its discretion by sticking with a joint trial absent a clear showing of substantial prejudice to the defendant. *United States v. Ciampaglia*, 628 F.2d 632, 643 (lst Cir. 1980).

Likewise, joinder is appropriate in shared conspiracy cases to avoid the risk of inconsistent verdicts which could be created by multiple trials. The Supreme Court has warned that the "scandal and inequity of inconsistent verdicts" is real and should be avoided whenever possible. *Richardson*, 481 U.S. at. 210. Joint trials "serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit." *Id*.

### III.  CONCLUSION

The government would be required to present substantially the same evidence in a trial involving Lancaster as it does in a trial for Rosser. The defendant's claims of prejudice falter given that Lancaster is charged with conspiring with Rosser in two out of three counts at issue and has not shown specific, compelling, or actual prejudice from standing trial together. Likewise, any claims of prejudice do not outweigh the potential inefficiency to the Court as well as the inconvenience and expense to the government and witnesses of separate trials. For all these reasons, the Court should deny Lancaster's motion for severance.

    Respectfully submitted,

    VIPAL J. PATEL
    Acting United States Attorney

    s/Kevin W. Kelley
    KEVIN W. KELLEY (0042406)
    NOAH R. LITTON (0090479)
    Assistant United States Attorneys

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing motion response was served this 18th day of October 2021 electronically on David H. Thomas and Kathryn S. Wallrabenstein, counsel for Defendant Lancaster.

                                                           s/Kevin W. Kelley
                                                           KEVIN W. KELLEY (0042406)
                                                           Assistant United States Attorney