**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CASE NO. 2:20-cr-62 (1) |
| vs. | : | JUDGE MORRISON |
| STEVEN G. ROSSER, | : | |
| Defendant. | : | |

## DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AS TO COUNT TWO

Defendant Steven Rosser, through counsel, respectfully moves this Court for a judgment of acquittal on Count Two of the Indictment.   The Government has failed to produce evidence that is sufficient to sustain a conviction and therefore judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) is merited. Federal Rule of Criminal Procedure 29(c)(2) states in pertinent part:

(c) AFTER JUTY VERDICT OR DISCHARGE

(2) Ruling on the Motion. If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

"The court, on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. Pro. 29(a).

"Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992), (*citing Jackson v. Virginia*, 443 U.S. 307 (1979)).

"A reversal is warranted ... if, viewing the record as a whole, the judgement is not supported by substantial and competent evidence." *United States v. Ward*, 957 F.3d 691, 696 (6th Cir. 2020) (quoting United *States v. Blakeney*, 942 F.32d 1001, 1010 (6th Cir. 1991).

<u>THE CHARGE</u>

Count Two of the Indictment charges Mr. Rosser with Conspiracy to Deprive Armen Stepanian of his civil rights, in violation of Title 18, United States Code, Section 241. In order to sustain a conviction for this offense, the Government must prove, beyond a reasonable doubt, that Mr. Rosser knowingly agreed with one or more persons to injure, oppress, threaten, or intimidate Mr. Stepanian; that in doing so, he specifically intended to interfere with Mr. Stepanian's exercise of enjoyment of any right or privilege secured by the Constitution or the laws of the United States, namely, his right to be free from unreasonable searches and seizures; and that Mr. Rosser acted under color of law.

The first element requires the Government to prove that two or more persons conspired, or agreed, to cooperate with each other to commit the crime of depriving another person of his civil rights. Additionally, the Government must prove that Mr. Rosser knowingly and voluntarily joined this agreement.

<u>GOVERNMENT'S THEORY</u>

The theory presented by the Government is as follows:

The Doll House, a local gentlemen's club, was owned by siblings Alex Nercesian and Yelena Nercesian (hereinafter "Nercesian"). Yelena was divorced from Armenak Stepanian (hereinafter "Stepanian"). Upon Alex's death, Yelena hired Nick Jgenti (hereinafter "Jgenti") to manage the club. Stepanian and Nercesian were in a legal battle for ownership of the club. Jgenti and Nercesian wanted to get rid of Stepanian. Jgenti, his girlfriend Allison Mills (hereinafter

"Mills"), Columbus Police Officers Steven Rosser (hereinafter "Rosser") and Whitney Lancaster
(hereinafter "Lancaster") conspired to set up Stepanian by planting cocaine on him and having him
arrested. The Government further theorizes that Rosser became involved because he owed Jgenti
for covering up for him in another matter three years earlier.

THE EVIDENCE

The evidence at trial established that on April 20, 2018, Rosser, working his assignment as
a CPD vice officer, aired over the police radio that he needed uniformed police officers to assist
him in a potential drug arrest at The Doll House. Rosser met with four members of the Columbus
Police Department and explained that he had a C.I. (Confidential Informant) inside the club, and
that he was awaiting a signal to let him know that the target of the investigation was present, and in
possession of illegal narcotics.

Sometime near 4:30 a.m., Rosser led the officers into the establishment. He went directly
to the office, and discovered Stepanian within. A search of the office revealed a small amount of
cocaine on the desk in the office. Stepanian was arrested, taken to police headquarters for
processing, then driven back to The Doll House.

The Government also presented a report (commonly referred to as a U-10-100), completed
by Rosser. The report indicated that due to complaints of after-hours drinking, and his observation
of multiple cars in the parking lot of the Doll House well after closing time, Rosser decided to
conduct a "compliance check" of the establishment. As the club was the holder of a liquor permit,
no warrant was required to enter the premises and conduct a search.

Mills testified that she, and Jgenti discussed how to get rid of Stepanian. She testified that
she jokingly said "Why don't you get your buddy Rosser to do it?" She did not testify as to any
specific plan, or any further conversations with Jgenti. She did testify, however, that she never had

3

any conversations with Rosser about setting up Stepanian, nor was she a part of any conversation between Jgenti and Rosser regarding this "plan."

Mills further testified that shortly after Stepanian was arrested, Jgenti told her that he just got a phone call from Rosser, who wanted to know what Mills had done with the rest of the cocaine. She admitted that she did not hear the phone call, and her only knowledge of it was from Jgenti.

Phone records presented by the Government established that no such phone call was made.

The testimony established that several months after the arrest of Stepanian, Mills sent him a text message indicating that he was set up by Jgenti and Nercesian.

Nercesian testified on behalf of the Government.   She indicated that she and Stepanian had already settled their legal dispute before his arrest, and further, that she did not conspire with anyone to deprive Stepanian of his civil rights.

The only direct evidence of any conspiracy is the testimony of Mills, who indicated that only she, Jgenti, and Nercesian discussed how to get rid of Stepanian. There is no evidence that Rosser conspired with anyone.

LEGAL ANALYSIS

The Government conceded that the case against Mr. Rosser was circumstantial. It has long been held that "It is not necessary that the Government prove a formal agreement, and the existence of a conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in a common plan…" *United States v. Graham*, 622 F.3d at 445, 448 (6th Cir. 2010). Circumstantial evidence alone, *if substantial and competent*, may sustain a conviction. *See United States v. Beverly*, 369 F.3d 516, 531 (6th Cir. 2004). *Emphasis added.*

In this case, however, the circumstantial evidence is neither substantial nor competent. The

4

actions attributed to Mr. Rosser are not much in dispute. He waited outside the Doll House with other officers, until he received a signal from a C.I. He then entered the Doll House, went to the office, saw Stepanian, found cocaine, and arrested Stepanian. From these facts, and the alleged statement of Jgenti to Mills, the Government suggests that a reasonable inference is that he knew of the conspiracy.

Just as reasonable an inference is that Jgenti lied to Mills about the phone call with Rosser; that Rosser's information to other officers was accurate; and that he was unaware of any plan or scheme of Jgenti's and Mills. In short, that he was an unwitting pawn, used by Jgenti in his efforts to get rid of Stepanian. As the evidence at trial indicates that no phone call was made from either of Rosser's phones to Jgenti, as Mills testified that Jgenti told her, this is not "just as reasonable" an inference, it is a *much more* reasonable inference.

Even if there was proof that Rosser know of the conspiracy, or was present at times, or associated with members of the group, it is not enough. Similarly, just because a defendant may have done something that happened to help a conspiracy does not necessarily make him a conspirator. As this Court instructed the jury, those factors should be considered, "But without more they are not enough."

The Government failed to introduce any conversations involving Rosser that established, even slightly, that he agreed, or conspired with others to commit the crime of depriving another person of their rights.

The Government failed to introduce any documents that contain statements attributed to Rosser that are so incriminating as to establish his involvement beyond a reasonable doubt. The Government proposed that by submitting a report that gives a false reason for entering the club, Rosser was attempting to conceal the truth, and therefore, must be a part of the conspiracy. The

Government did not establish where this report is filed, who reads the report, what actions would be taken as a result of this report, nor how exactly this report shielded Rosser. The Government also failed to address the fact that Rosser communicated openly with other officers that this was a possible drug arrest based on the tip of a C.I.

In its closing remarks, while addressing the possibility that Rosser's report was designed to protect the identity of his source, the Government directed the jury to look at the standard operating procedures of CPD regarding reports involving Confidential Informants. Instead of using a name, an officer should indicate that the person is a C.I., and identify him or her by number. Of course, if there is only a handful of people in a particular location, and a report indicates that one of them is a C.I., it would not be a difficult task to determine who it is.

The Government acknowledges that although Rosser's knowledge of Jgenti's plan, and his knowing and voluntary participation could not be proved directly, it could be inferred from Rosser's actions. As Justice Miller points out in his dissent in *Curley*: "Nevertheless, the presumption of innocence insists that there be no equivocation in that proof. As always, it must convince beyond a reasonable doubt. If it be not of that quality, if it be not clear but equivocal, then the jury must not be permitted to speculate that the defendant is guilty." Justice Miller observed that in the case against Curley, "[a]t the conclusion of the Government's evidence, when the case was submitted to the jury, that body could believe every word said against [defendant] and still it must choose between inferring guilt or innocence, when the evidence afforded no reason for choosing the former instead of the latter. In such circumstances, it is impossible for the jury to infer guilt; it can only surmise it. Webster says that the word "infer" frequently implies little more than "surmise," but I have never supposed that such a connotation is proper concerning the action of a jury in a criminal case ... For, on the motion for a directed verdict, the government's evidence could

be given the fullest weight, its witnesses could be regarded as credible, and yet the inference of guilt was not justifiable and the jury should not have been permitted to draw it. The reason is that the inference of guilt from circumstantial evidence is never justifiable when the proved facts at least equally well permit innocence to be inferred. Guilt can be inferred from such evidence only when it is so strongly compelled that the inference of innocence is excluded." *Id*.

When the established facts in a wholly circumstantial case give rise to two equal inferences, one suggesting guilt, and one suggesting innocence, a judgment of acquittal is mandated.   In *United States v. Leon*, 534 F.2d 667 (6th Cir. 1976), it was said that "(if a) conviction is supported only by circumstantial evidence from which (we) can infer either facts tending to prove the defendant's guilt, or facts tending to prove his innocence," then a verdict of guilty cannot stand."

This is not to suggest that any hypothesis of innocence in a circumstantial case mandates an acquittal.

In this case, the Government contends that Mr. Rosser, while acting as a police officer, joined others (Jgenti and/or Mills and/or Nercesian and/or Lancaster) in a conspiracy to deprive Stepanian of his civil rights, and the overt acts alleged were that he arrived at the Doll House after closing; he proceeded to the office inside where Stepanian was located; he searched the office, found residue of cocaine and arrested Stepanian; that he and Lancaster were in frequent contact with each other by cellular phone; Lancaster was positioned by the Doll House; and that Rosser has taken steps to conceal the conspiracy. (Logically, however, if Rosser was attempting to conceal his actions, he would not have invited four other police officers to join him. Nor would he have informed them that this was a drug case and that he had a C.I. inside the Doll House with whom he was working.)

7

Although the Government need not prove Rosser's motive in joining this conspiracy, they speculated to the jury that Rosser owed Jgenti a favor in return for assistance given by Jgenti three years earlier. Therefore, the Government suggests that an officer with twenty years of experience would risk his career and freedom by setting up a person on a low level felony drug possession case with nothing to gain for himself but to clear a debt owed to Jgenti, of which there was no evidence. This is not reasonable. It is pure speculation, based on no evidence whatsoever.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court adopted that the standard set forth in *Curley v. United States*, 160 F.2d 220 (D.C. Cir.), *cert. denied*. 331 U.S. 837 (1947):

"The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If [the judge] concludes that upon the evidence there must be such a doubt in a reasonable mind, [the judge] must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If [the judge] concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the judge] must let the jury decide the matter. In a given case, *particularly one of circumstantial evidence*, that determination may depend on the difference between *pure speculation* and *legitimate inference from proven facts*. The task of the judge in such case is not easy, for the rule of reason is frequently difficult to apply, but we know of no way to avoid the difficulty" (*emphasis added).*

In this case, the Government has failed to produce evidence of sufficient quality and

substance to permit a reasonable inference that Rosser either knew, or joined a conspiracy to deprive Stepanian of his rights. "A reversal is warranted...if viewing the record as a whole, the judgment is not supported by substantial and competent evidence." *Ward*, at 696.

For this reason, Defendant respectfully requests that the Court enter a judgment of acquittal on Count Two of the Indictment.

Respectfully submitted,

/s/ **Robert F. Krapenc**
ROBERT F. KRAPENC
Ohio Supreme Court No. 0040645
150 East Mound Street, Suite 310
Columbus, Ohio 43215
P: (614) 221-5252
F: (614) 224-7101
Bob@Krapenclaw.com
Counsel for Defendant Steven Rosser

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Clerk of Court for the United States District Court for the Southern District of Ohio using the CM/ECF system, which will send notification of such filing to the following on March 7, 2022, by electronic mail:

Assistant U.S. Attorneys Kevin Kelley and Noah Litton
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215

/s/ **Robert F. Krapenc**
ROBERT F. KRAPENC