IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No.  2:20 cr 062(1) |
| vs. | : | JUDGE  MORRISON |
| STEVEN G. ROSSER, | : | |
| Defendant. | : | |

SENTENCING MEMORANDUM FOR STEVEN G. ROSSER

Now comes Defendant, Steven G. Rosser, through counsel, and hereby submits the following Sentencing Memorandum in support of a sentence below the Guideline Range, which is sufficient, but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a).

**I.   Procedural History**

Steven G. Rosser and co-defendant Whitney R. Lancaster were charged on March 26, 2020 in a three-count Indictment. Count One charged Steven Rosser with Conspiracy to Violate Another Person's Civil Rights, in violation of 18 U.S.C. § 241. Specifically, it was alleged that Mr. Rosser, from March 28, 2015 through March 26, 2020, along with others, did knowingly and willfully conspire and agree together to injure, oppress, threaten, and intimidate "B.A." in the free exercise and enjoyment of his Constitutional rights, namely, the right to be free from unreasonable search and seizure without probable cause, and did so while acting under color of law.

Count Two charged both Mr. Rosser and Mr. Lancaster with Conspiracy to Violate Another Person's Civil Rights, in violation of 18 U.S.C. § 241. Specifically, it was alleged that Mr. Rosser and Mr. Lancaster, and others, from April 20, 2018 until March 26, 2020, did knowingly and willfully conspire and agree together

to injure, oppress, threaten, and intimidate "A.S." in the free exercise and enjoyment of his Constitutional rights, namely, the right to be free from unreasonable search and seizure without probable cause, and did so while acting under color of law.

Count Three charged Mr. Rosser and Mr. Lancaster with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. §1349. Specifically, it was alleged that from January 4, 2018 through at least May 2, 2018, Mr. Rosser, Mr. Lancaster, and others did knowingly and willfully conspire and agree to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds. As a part of this scheme, it was alleged that Mr. Rosser and Mr. Lancaster "double-billed" CPD and the Fort Rapids ownership group while performing Special Duty at Fort Rapids.

On January 3, 2022, the Government filed a motion to dismiss Count Three of the Indictment (ECF #68). The motion was granted, and on January 31, 2022, Count Three was dismissed.

The remaining Counts proceeded to trial by jury. On February 22, 2022, Whitney Lancaster was acquitted of the charges alleged in Count Two of the Indictment. Steven Rosser was acquitted of the charges alleged in Count One of the Indictment, but found guilty as to Count Two of the Indictment.

Steven G. Rosser is now before this Court for sentencing on his conviction for Conspiracy to Violate Another Person's Civil Rights, in violation of 18 U.S.C. § 241.

## II. Determining Mr. Rosser's Sentence

The Statutory provisions for the charge in Count Two of the Indictment include a maximum term of 10 years imprisonment, three years of supervised release, and a maximum fine of $250,000.00. There is no mandatory minimum term of imprisonment.

The Sentencing Guidelines are no longer mandatory, but instead are advisory. *United States v. Booker,* 543 U.S. 220 (2005).  After the Supreme Court's decision in *Booker*, "district courts have enhanced discretion in the sentencing of criminal defendants." *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir.

2005). "[D]istrict courts are required to consider the applicable Guidelines sentencing range when arriving at a defendant's sentence, 16 U.S.C. § 3553(a)(4), but only as one factor of several laid out in § 3553(a)." *Id*. (citing Booker 125 S. Ct. at 764).

The Sixth Circuit explains that a district court must: (1) acknowledge the defendant's applicable Guidelines range; (2) discuss the reasonableness of any variation from that range; and (3) consider the other factors identified in 18 U.S.C. § 3553 (a). *Id*.

### A. Guideline Range

Steven Rosser was found guilty of Conspiracy to Violate Another Person's Civil Rights. Pursuant to U.S.S.G. § 2H1.1(a)(2), the base offense level is 12.

At the time of the offense, Mr. Rosser was employed with the Columbus, Ohio Division of Police, and therefore, pursuant to U.S.S.G. § 2H1.1(b)(1), a six-level enhancement is applied.

There is no victim related adjustment, no adjustment for his role in the offense, nor an adjustment for obstruction of justice. Therefore, the adjusted offense level is 18.

Similarly, there is no Chapter Four enhancement, resulting in a total offense level of 18.

The Presentence Investigation Report correctly calculates his criminal history score to place Steven in Criminal History Category I.

### B. Departure from the Guideline Range

The probation officer did not identify any factors warranting a departure from the advisory guideline range.

### C. Section 3553 Factors

The factors identified in 18 U.S.C. § 3553(a) suggest a sentence below the Guideline range would be appropriate for Mr. Rosser. In reviewing a sentence for reasonableness, the Sixth Circuit looks to whether the district court considered the relevant § 3553(a) factors. *See United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006). The Sixth Circuit explains, "a district court's mandate is to impose 'a sentence sufficient, but not

greater than necessary, to comply with the purposes' of section 3553(a)(2)." *Id.* At n.1 (quoting 18 U.S.C. § 3553(a)).

Section 3553 (a) states:

(a) Factors to be considered in imposing a sentence.  The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider –

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) [the Sentencing Guidelines];

(5) [the policy statements issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Nature and Circumstances of the Offense

The facts that gave rise to this charge were presented through witness testimony at trial. The Government produced evidence that Yelena Nercessian owned the Dollhouse Gentlemen's Club along with her

husband, Armen Stepanian. Nick Jgenti was employed as the manager. Nercessian and Jgenti became concerned about Stepanian's role at the Dollhouse, and discussed ways to get rid of him. Allison Mills, Jgenti's on again, off again girlfriend indicated that Jgenti planned to set up Stepanian and intended to include Steve Rosser, who was employed as a Columbus Police Officer, and assigned as a liquor compliance officer/liaison within the Vice Unit.

On April 20, 2018, Jgenti supplied Mills with cocaine to give to Stepanian. Rosser, along with other CPD Officers, was waiting outside for a signal from his C.I. When the signal came, Rosser and other officers entered the Dollhouse. Rosser went directly to the office where he found Stepanian and a small amount of cocaine. Stepanian was arrested and his vehicle searched. Stepanian was taken to CPD headquarters, booked, released and taken back to the Dollhouse. Based on the warrantless search of the vehicle and the seizure of Armen Stepanian for several hours (without probable cause, according to the Government,) Steve Rosser was prosecuted and convicted of Conspiracy to Violate Another Person's Civil Rights.

The nature and circumstances of the offense are highly unusual. There is no allegation, and certainly no evidence that Mr. Rosser intended to, or actually did profit from this offense. There is no evidence that Mr. Rosser and Armen Stepanian had a negative history between them that would explain why Steve would willfully violate his civil rights. The Government has suggested that Mr. Rosser "owed" Nick Jgenti from an event three years earlier, but this is mere speculation. Further, this suggestion is contradicted by the fact that it was Steve Rosser's testimony at a liquor license renewal hearing that resulted in the closure of Nick's Cabaret, which was owned by Jgenti.

The History and Characteristics of the Offender

  A. *Personal and Family*

Steven G. Rosser is forty-six years old. He has three children, Darian, who is 26 years old and living in Cincinnati, Daelyn, who is 20 years old and attends Ohio University, and Dylan, who is 17 years old. He has been married to his wife Deana since July, 2013. Deana has a son, Blake, whom Steven has helped raise since Blake was five years old. Blake is now 17 years old and suffers from cystic fibrosis, liver disease, and diabetes.

He is treated by a team of physicians at Nationwide Children's Hospital in Columbus, Ohio, and UPMC Children's Hospital of Pittsburgh. Steve is very much involved with caring for Blake, taking him to various medical appointments and encouraging him when he is emotionally drained from the seemingly unending string of tests and disappointing results. Steve and Blake have formed a very special bond over the years.

Steve is also the primary source of financial support for the family, as Deana was forced to quit her job to care for Blake. To pay for the necessary medical treatment for Blake, Steve took as many hours of special duty and overtime as he could. When employed by the Columbus Police Department, he had medical insurance that helped cover some of the costs, but he has since lost the job due to the current charge.

Steve is not only a good father and a good step-father, he is also a caring grandfather. Steve has three grandchildren. Steve's daughter Darian has had some recent difficulties which were negatively affecting her two children, Jolene (1 year old) and Robin (9 months old.) Steve and Deana traveled to Cincinnati to seek emergency custody, which was granted. They brought the children back to the Columbus area to live with them. Steve and Deana have filed for permanent custody, with a trial date scheduled for November 14, 2022 in Hamilton County, Ohio.

Steven Rosser is, above everything, a family man. He was raised in a good home, with parents who have now been married for 47 years.  His father, a retired executive of PepsiCo., and his mother, a retired nurse practitioner, were present during the trial, and continue to support Steve, as does his entire family. Steve's grandmother passed away in July, 2021. Steve was able to travel to Dover, Tennessee to assist his elderly grandfather with moving personal items into storage. Within months, Steve's grandfather's health began declining rapidly. Steve's parents decided to move to Tennessee to help his grandfather. Again, Steve was permitted to travel to assist in their relocation.

As a result of this case, Steve was terminated from employment with the Columbus Police Department. The family was forced to sell their home, and have moved into a two-bedroom single-level townhome.  Steve was able to gain employment with Service Master by Neverman Construction Company in Columbus, Ohio, where his annual salary is slightly more than 50% of what he was earning at the police

department. Over the last two and a half years, Steve has lost the job that he held for 20 years, experienced a significant reduction of income, faced a criminal indictment as well as several civil lawsuits, experienced the embarrassment of the publicity surrounding the allegations and seeing the effect on his family, moved his family to a small, but affordable home, and lost his grandmother. Despite all of those difficulties, Steve continued to support his family. When he realized that his grandchildren were not in a good situation, he went to Hamilton County and brought them back to live with him and Deana, taking on the responsibility of raising two more children. When his grandmother became ill and started receiving hospice care, he went to Tennessee to help his grandfather. When she died, he went back down to help him again. Because family is so important to Steve, he made sure that his grandchildren had the opportunity to visit with his grandfather. When Steve's parents decided to relocate to Tennessee, Steve helped them pack, move and unpack. With his sentencing date fast approaching, Steve and his family travelled to Nashville to discuss Blake's medical condition with doctors there, in the event that his family would have to relocate there without him.

It is difficult to imagine the extraordinary stress that Steve has experienced over the last several years. Through it all, Steve has remained what he is, a good son, a good husband, and a good father. He is, above all, a family man.

  B.  *Employment/Military*

Steven Rosser joined the United States Marine Corps at the age of 17. He served four years, and was honorably discharged on August 20, 1998. During that time, he earned a Rifle Expert Badge, a Pistol Expert Badge, a Certificate of Commendation, and Medals for National Defense Service and Good Conduct. Steve re-enlisted in December, 2005 and served a one year combat tour in Iraq. During that time, he earned a Sea Service Deployment Ribbon, a Certificate of Commendation, and Medals for Army Achievement, Iraq Campaign, Selected Marine Corps Reserve, Armed Forces Reserve, and Global War on Terrorism Service, National Defense and Good Conduct.

After a brief stint as a Corrections Officer for the Hamilton County Sheriff's Office, Steve was employed by the Columbus, Ohio Division of Police, beginning in December, 2000. As a police officer, Steve

was very involved with the neighborhoods he patrolled. It was not long before the police administration began receiving letters and phone calls complimenting Steve for his work in the community, both on and off duty. *(See examples in Attachment "A")*

Steve's supervisors also took notice of his efforts. He received letters of commendation recognizing his exceptional work as a police officer, and his volunteer work in the community. Steve also was awarded a Special Commendation in 2007 for helping to save the life of another, and a Medal of Merit Award in 2008 for actions that helped to save the life of another and resulted in the apprehension of a violent, armed felon. *(See examples in Attachment "B")*

In 2013, Steve was assigned to CPD's Vice Unit. He was responsible for investigating stores and bars for the sale of alcohol to those who were underage, and to investigate bars that were suspected of violating the liquor laws, usually by serving after hours. During his time in the Vice Unit, Steve became very well known to the owners and managers of the carry-outs, bars and gentlemen's clubs in Columbus. His job required that he do occasional "spot checks" of establishments for liquor law compliance. Although he acted in a friendly manner with many of the owners and managers, he was never their friend. It was his job to get them to trust him, and encourage them to give him information on illegal activities taking place in other establishments.

Eventually, Steve became involved with the Nuisance Abatement Group. He was the liquor liaison and worked to coordinate civil citations from the Ohio Investigative Unit and CPD Vice criminal investigations. The purpose of nuisance abatement was to eliminate businesses and seize properties where the property owner knew about the illegal conduct, but failed to do anything about it. Business owners would call Steve who would make suggestions on how to remedy the illegal activity, such as installing cameras or hiring security.

One of Steve's responsibilities was to testify at administrative permit renewal hearings. In cases where a business has been repeatedly cited for serving underage patrons, or a significant amount of violent criminal activity has taken place, the City of Columbus would object to the renewal of the liquor license.

Steve worked closely with Stephan Dunbar, an Assistant City Attorney for the City of Columbus, and a Special Assistant United States Attorney. Mr. Dunbar was interviewed by agents of the Federal Bureau of Investigation, and indicated that Steven Rosser was personally responsible for over three quarters of the nuisance abatement cases handled by the Columbus City Prosecutors Office.

Steve also worked closely with William Sperlazza, another Assistant City Attorney with the City of Columbus. In August, 2015, Steve Rosser testified at a hearing concerning the renewal of a liquor permit to which the City had objected. Attachment "C" is a copy of the email sent from Mr. Sperlazza to Ronald Kemmerling, Steve's direct supervisor, expressing his gratitude and admiration for the manner in which Steve testified under difficult conditions.

Steve's job was demanding. His responsibilities required him to work hours from late evening until early morning. He dealt with some of the most unsavory characters one could imagine. It was Steve's goal to clean up the places that he could by getting them into compliance, and shutting down the ones that wouldn't. It was difficult work, but work that Steve enjoyed, and work that he did well. Steve was proud to be a CPD Detective. Throughout his career with the Columbus Police Department, Steve has consistently received excellent performance evaluations, either meeting or exceeding expectations. *(See Attachment "D")*

Steve has suffered a loss of standing in the community, a loss of respect, and the loss of a career.

### III. CONCLUSION

A downward variance is warranted in this case for the following reasons:

<u>Extraordinary Family Circumstances</u>

Steve is the sole financial supporter of his family. He spent years working overtime and special duty to provide for his family. He provides emotional and financial support to his stepson who suffers from severe medical issues that require frequent treatment in Ohio and Pennsylvania. He and his wife have recently been granted emergency custody of Steve's infant grandchildren. A prison sentence would negatively affect their well-being. (A downward variance under similar circumstances has been affirmed in United States v. Lehmann, 513 F.3d 805, 806, 809 (8th Cir. 2008)).

Lack of Significant Prior Record

Although this is taken into account in the guidelines, and cannot be the basis for a downward departure, the Court may consider it as a factor in determining whether to vary from the guidelines. Steve's lack of criminal history and the fact that he has led a law-abiding life for a significant number of years, indicate that he is unlikely to commit further offenses.

History of Employment/Military Service

Steve's five years of service with the Marine Corps, coupled with 20 years of service as a police officer with the Columbus Police Department attest to his steady character. Steve has been an asset to the citizens, taking on the responsibilities of improving and protecting the community. Being a police officer is often a thankless job, and a dangerous one.

A sentence of probation is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a)(2): the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Steve has been, and will continue to be punished. He has lost his job, his standing in the community, and the ability to ever again serve as a police officer. This guarantees that he will not be in a position to commit this offense again. He has found employment, but at a drastically reduced salary. A period of probation, in conjunction with the collateral consequences that Steve has suffered, is enough to deter anyone who is considering committing the same offense.

The court has the discretion to consider a variance under the totality of the §3553(a) factors. *(See United States v. Arrelucea-Zamudio, 581 F.3d 142, 149 (3rd Cir. 2009))* In this case, the factors support a downward variance to a sentence of probation.

Section 3553(a)(3), the kinds of sentence available, requires the Court "to consider sentences other than imprisonment" Gall v. United States, 552 U.S. 38, 59 (2007). A term of probation is a considerable

restriction on a person's freedom. It reflects the seriousness of the offense, punishes the offender, and serves to protect the public from further crimes of the defendant.

Pursuant to 18 U.S.C. § 3553(a)(6), the Court is required to consider sentences among defendants with similar records who have been found guilty of similar conduct in order to avoid unwarranted disparities. The United States Sentencing Commission Interactive Data Analyzer indicates that between 2017 and 2021, of the defendants sentenced pursuant to U.S.S.G. § 2H1.1 with a Criminal History Category of I, 25% received a sentence of either probation or probation and alternatives, with 15% sentenced to probation only. Fifty percent of the defendants sentenced received a sentence of less than 18 months.

A sentence of probation for Mr. Rosser would not be disparate to sentences given to defendants with similar charges and similar records.

For these reasons, Defendant respectfully requests that the Court sentence him to a period of probation, as it will be sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

                              Respectfully submitted,

                              **/s/ Robert F. Krapenc**
                              ROBERT F. KRAPENC 0040645
                              150 East Mound Street, Suite 310
                              Columbus, Ohio 43215
                              P: (614) 221-5252
                              F: (614) 224-7101
                              Bob@Krapenclaw.com
                              Counsel for Defendant Steven Rosser

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Clerk of Court for the United States District Court for the Southern District of Ohio using the CM/ECF system, which will send notification of such filing to the following on September 30, 2022, by electronic mail:

Assistant U.S. Attorneys Kevin Kelley and Noah Litton
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215

                              **/s/ Robert F. Krapenc**
                              ROBERT F. KRAPENC