**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | | |
| **v.** | **:** | **Case No. 2:20CR-062(1)** |
| | | |
| **STEVEN G. ROSSER** | **:** | **JUDGE MORRISON** |

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Rosser is scheduled for sentencing on October 6, 2002.  For the reasons that follow, the United States requests that a sentence of imprisonment of 33 months be imposed, which is both reasonable and appropriate, as well as legally supported by the circumstances of this case.

As initially established by the Presentence Investigation Report, with his conviction for Conspiracy to Violate Another Person's Civil Rights, Defendant Rosser has an initial offense level of twelve (U.S.S.G. §2H1.2(a)(2)).  The Probation Officer also properly determined that Rosser should receive a six-level enhancement for committing the instant offense while a public official and under color of law pursuant to U.S.S.G. §2H1.2(b)(1).  Defendant Rosser did not offer any statement for acceptance of responsibility and with his conviction at trial he is not entitled to any acceptance reduction.  This results in a final offense level of eighteen, with a criminal history category of I, defendant Rosser has a sentencing range of 27-33 months of imprisonment.   There are no objections to these guideline findings.

While the federal Sentencing Guidelines are no longer mandatory, United States v.

Booker, 543 U.S. 220 (2005), the Guidelines should still be "the starting point and initial

benchmark" in determining a sentence. United States v. Bolds, 511 F.3d 568, 579 (6th Cir. 2007)

(quoting Gall v. United States, 552 U.S. 38, 49 (2007)). Ultimately, a sentence must be

reasonable. United States v. Jackson, 408 F.3d 301, 304 (6th Cir. 2005) (citing Booker, 543 U.S.

at 260). Specifically, the length of a sentence "must be proportionate to the seriousness of the

circumstances of the offense and offender, and sufficient but not greater than necessary to

comply with the purposes of §3553(a)." United States v. Vowell, 516 F.3d 503, 512 (6th Cir.

2008)(internal quotations omitted). The factors listed in 18 U.S.C. §3553(a) include, but are not

limited to:

    (1)    the nature and circumstances of the offense and the history and characteristics of defendant;

    (2)    the need for the sentence imposed--

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant; and

        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In the instant case, the undersigned believes the nature and circumstances of the offense

and the history and characteristics of the defendant are the prevailing and most important

§3553(a) factors relevant to the sentencing of defendant Rosser.

The undersigned are confident that the relevant facts underlying Rosser's conviction at

trial are easily recalled by this Court.  The jury convicted Rosser for conspiring with others to

falsely arrest Armen Stepanian at the Dollhouse on April 20, 2018.  This arrest deprived

Stepanian of his right to be free from unreasonable search and seizure without probable cause in

2

violation of 18 U.S.C. § 241.  The evidence supporting this conviction included Rosser's

ongoing social relationship with the Dollhouse manager, Nick Jgenti, who actually provided the

cocaine later seized from Stepanian.  This false arrest was done in an effort to jeopardize

Stepanian's ownership interests in the Dollhouse during a civil dispute with his ex-wife.  It was

also the culmination of an ongoing relationship with club owner and renowned drug user Jgenti

which spanned several years and different strip club venues.

As a longtime member of the Columbus Division of Police's Vice unit, Rosser was well

aware of the appropriate procedures to be utilized in conducting undercover investigations.  In

addition to violating the law by allowing civilians to set up a civilian victim for arrest, Rosser's

behavior on the night of this incident shows premeditation and a willingness to ignore both the

law and his duties as a police officer.

The circumstances of the arrest of Stepanian for the alleged possession of a miniscule

quantity (0.017 grams) of cocaine also undermine any hopes of Rosser for leniency at

sentencing.  The arrest was not only orchestrated but also accompanied by falsified

documentation to conceal the conspiracy activity.  Rosser's arrest report falsely claimed he was

following up on an anonymous citizen complaint concerning after hours drinking occurring at

the Dollhouse.  In fact, there was no such complaint and evidence at trial established  Rosser

himself had participated in similar after hours drinking activity on numerous occasions.  In

addition, in his arrest report, Rosser falsely claimed to have interviewed witnesses at the scene

and he neglected to mention the accompanying unauthorized search of Stepanian's vehicle.

Rosser also fabricated statements that he claimed came from witness Allison Mills in an effort to

bolster the fraudulent arrest.  In fact, in his report Rosser described Stepanian as being caught

3

bent over the desk along with a "pile of suspected cocaine".  This is the same cocaine that witnesses actually described Rosser as having difficulty finding and having to look for under food containers in the office.

The quantity of cocaine seized from the office is actually quite important given Rosser's actions at the scene.  A metal paper clip typically weighs approximately one gram establishing the quantity of cocaine seized from Stepanian was less than 1/50[th] of that weight.[1]  For this "offense", Stepanian was searched, handcuffed, interrogated, transported to CPD headquarters for booking photographs and fingerprints.  In addition his car was searched at the scene.  All of these enforcement actions occurred simply because Rosser had previously (and illegally) agreed with Jgenti and others to make this arrest happen.  The facts clearly do no support the actions taken and instead corroborate that there was an ongoing plan to ensure that Stepanian suffered an arrest.  There was no ongoing investigation, no follow up investigation and no criminal charges were ever subsequently filed against Stepanian.

Even more significant, when considering Rosser's history and characteristics, the evidence introduced at trial overwhelmingly established that Rosser's ongoing conduct as a CPD officer was an embarrassment to his badge and his sworn duty to protect and serve.  Despite being tasked with investigating liquor and nightclub violations, Rosser used his access and leverage over these establishments for his own personal gain and ego.  Drinking on the job (without paying), drinking after hours, regularly socializing with dancers and those he was tasked with investigating were the hallmarks of Rosser's ongoing law enforcement activity.  All

---

[1] For additional comparison, Wikipedia suggests most sugar packets weigh between 2 to 4 grams meaning the cocaine that night was not even 1/100[th] of the weight of  a single packet.

of this was occurring while Rosser was getting paid to work long hours "undercover" as a police officer.    The fact that numerous witnesses recognized and knew Rosser to be a police officer throughout this time completely undermine any claims that he was working undercover to investigate the very activity in which he himself so willingly participated.

The seriousness of the offense, depravation of the civil rights of a citizen by an officer sworn to uphold and protect those very citizens, further highlights the need for a sanction of a significant term of imprisonment.  Police officers are given great discretion and authority in the performance of their duties with limited supervision or controls.  Defendant Rosser took full advantage of the nature of the vice unit responsibilities to benefit his own selfish vices.

Other district courts from across the country recognize the unique and acute harm that police officers pose—both to their particular victims and to society at-large—when they abuse their special position of trust and authority by violating the civil rights of those they are sworn to protect and serve.

For example, in 2018, William Dukes, Jr., a sergeant with the Providence, Kentucky Police Department, was sentenced to 42 months in federal prison following a similar trial and conviction for depriving a victim of his civil rights by ginning up a false arrest of that individual. *United States v. Dukes*, 779 F. App'x 332, 334 (6th Cir. 2019).  There (as here), the officer was motivated by personal animus toward the victim, who had previously complained about the officer.  Rather than taking that complaint in stride, the officer showed up in the middle of the night at the victim's residence, barged in, and arrested him without probable cause.  *Id.*  In affirming the officer's conviction and sentence, the Sixth Circuit noted that "the string of horrors Officer William Kukes Jr. paraded on [the victim] . . . has no place in our society."  *Id.* at 333.

Likewise, earlier this year, former Baltimore Police Detective Robert Hankard was sentenced to 30 months in federal prison for his role in falsely arresting a victim by planting a BB gun on him. *Ex Baltimore Detective Hankard Gets 30 Months for Role in Planting BB Gun*, CBS Baltimore News (July 18, 2022), https://www.cbsnews.com/baltimore/news/robert-hankard-baltimore-police-gun-trace-task-force-sentenced-gttf/.  There (as here), Hankard and another officer conspired to falsely arrest the victim due to personal animus against that man, who was run over (improperly) by their supervisor several years earlier. *Id.*  Rather than allow their supervisor to take the fall for that arrest, Hankard and former Police Sergeant Keith Gladstone raced to the victim's house, retrieved a gun, and then planted it at the scene of the crime. *Id.*  The officers later agreed to lie if questioned about the incident. *Id.*  Gladstone, for his part, at least accepted responsibility for his actions, pled guilty, and testified against the other members of the conspiracy, which explains his lenient sentence of just 21 months in prison. *Id.*  Here, of course, Steven Rosser has still not accepted responsibility for his conduct in facilitating the false arrest of Armen Stepanian.

And in 2013, former Camden, New Jersey Police Officer Jason Stetser was sentenced to 46 months in federal prison for his role in conspiring with other officers to gin up false arrests by planting evidence on the victims (including drugs) and preparing false reports for the same. *Former Camden Cop Sentenced to Nearly 4 Years for Conspiracy*, South Jersey Times (Jan. 31, 2013), https://www.nj.com/camden/2013/01/former_camden_cop_sentenced_to_1.html.  Yet in that case, the officer again accepted responsibility for violating the sacred trust we place in our law-enforcement officials by pleading guilty to the conspiracy.  Here, of course, Steven Rosser continues to deny that he did anything wrong.

In each of these cases, the officers, by definition, had very limited criminal histories.  Yet the sentencing judges recognized the very real, very lasting harm the officers caused both to the victims and to the rest of the citizens they were sworn (and trusted) to protect.  And in each case, the district court judges imposed a sentence in-line with what the Government is requesting in this case.  While Steven Rosser also has a very limited criminal history, such background is hardly significant or unique when the defendant was previously a law enforcement official.  The sentencing range of 27-33 months is established for precisely the behavior for which Rosser was convicted and should be applied in this case.

Consistent with all of these facts and in consideration of the applicable 18 U.S.C. §3553(a) factors, the United States recommends a sentence of imprisonment of 33 months which is at the top of the applicable guidelines range.  The offense of conviction and the above described circumstances suggest a sentence of at least this length is warranted under the sentencing guidelines.  This sentence would also be reasonable under the rationale of Booker, 543 U.S. 220 (2005); United States v. Henry, 545 F.3d 367, 385 (6th Cir. 2008) ("A sentence within the applicable Guidelines range is accorded a presumption of reasonableness in this circuit.") (citation omitted).

**<u>Conclusion</u>**

Based upon the foregoing, the United States submits that the defendant's offense level and criminal history categories should be an offense level of 18, criminal history category I, with a sentencing range of 27-33 months. Considering the sentencing factors set out in 18 U.S.C. §3553(a), including the need to provide just punishment for the offense, afford adequate deterrence to criminal conduct, and promote respect for the law, the United States requests that defendant Steven Rosser be sentenced to a term of imprisonment of 33 months.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

<u>s/Kevin W. Kelley</u>
KEVIN W. KELLEY  (0042406)
NOAH R. LITTON (0090479)
Assistant United States Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Government Sentencing Memorandum was served this 30th day of September 2022, via the Court's electronic filing system (ECF) on counsel for defendant, Robert Krapenc.

<u>s/Kevin W. Kelley</u>
KEVIN W. KELLEY
Assistant U.S. Attorney
